**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

REALTIME DATA LLC d/b/a IXO,

        Plaintiff,

   v.

HEWLETT PACKARD ENTERPRISE CO., HP
ENTERPRISE SERVICES, LLC, and SILVER
PEAK SYSTEMS, INC.,

        Defendants.

Civil Action No. 6:16-cv-00086

JURY TRIAL DEMANDED

**SILVER PEAK SYSTEMS, INC.'S
<u>MOTION TO SEVER AND TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404</u>**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................................1

STATEMENT OF FACTS ......................................................................................................2

I.  THIS ACTION..............................................................................................................2

II.  THE PARTIES..............................................................................................................3

    A.  Plaintiff Realtime Data LLC................................................................................3

    B.  Defendant Silver Peak Systems, Inc. ...................................................................3

    C.  Relevant Third Parties...........................................................................................4

ARGUMENT .........................................................................................................................6

I.  THE CASE AGAINST SILVER PEAK SHOULD BE SEVERED ................................6

    A.  The Claims Against Silver Peak Do Not Arise Out of the Same
       Transaction or Occurrence as the Claims Against HPE and HPES........................6

    B.  This Court May Sever To Facilitate Transfer .........................................................8

II.  THE CASE AGAINST SILVER PEAK SHOULD BE TRANSFERRED TO
    THE NORTHERN DISTRICT OF CALIFORNIA.............................................................9

    A.  This Case Could Have Been Brought In Northern California .................................9

    B.  The Northern District of California Is Clearly More Convenient Than
       This District ..........................................................................................................10

         1.  The Private Interest Factors Favor Transfer to the California ...................10

             a.  Convenience Heavily Favors Transfer Because the
                 Parties and All Willing Witnesses Are Located Outside
                 This District ..................................................................................10

             b.  The Relevant Documents Are Either Located or Easily
                 Accessed in California .................................................................11

             c.  The Availability of Compulsory Process for Relevant
                 Third-Party Witnesses Favors Transfer .........................................12

             d.  No Practical Problems Favor Litigation in This District
                 Compared to the Northern District of California...........................13

i

**TABLE OF CONTENTS**
**(Continued)**

Page

2.   The Public Interest Factors Also Support Transfer to California ..............14

a.   Transfer Would Not Create Administrative Difficulties
in the Northern District of California...............................................14

b.   The Interest in Having Local Disputes Decided at
Home Strongly Favors Transfer to the Northern District
of California ...................................................................................14

c.   The Familiarity with the Governing Law and Potential
Conflicts of Law Factors Are Neutral...........................................15

CONCLUSION...........................................................................................................15

CERTIFICATE OF SERVICE ...................................................................................17

CERTIFICATE OF CONFERENCE...........................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Balthasar Online, Inc. v. Network Solutions, LLC*,
654 F. Supp. 2d 546 (E.D. Tex. 2009) ............................................................................8

*Collins v. JC Penney Life Ins. Co.*,
No. 3:01-cv-04069, 2002 WL 505931 (N.D. Cal. Apr. 1, 2002) ...........................12

*EON Corp. IP Holdings, LLC v. Sensus, USA, Inc.*,
2:10-CV-448, 2012 WL 122562 (E.D. Tex. Jan. 9, 2012) ....................................15

*GeoTag, Inc. v. Aromatique, Inc.*,
No. 2:10–cv–570, 2013 WL 8349856 (E.D. Tex. Jan. 14, 2013) ..........................14

*In re Acer Am. Corp.*,
626 F.3d 1252 (Fed. Cir. 2010) ....................................................................10, 11

*In re EMC Corp.*,
677 F.3d 1351 (Fed. Cir. 2012) ......................................................................6, 7

*In re Genentech, Inc.*,
566 F.3d 1338 (Fed. Cir. 2009) ....................................................................11, 12

*In re Hoffmann-La Roche Inc.*,
587 F.3d (Fed. Cir. 2009) ..............................................................................1, 11

*In re Horseshoe Entm't*,
305 F.3d 354 (5th Cir. 2003) ..............................................................................13

*In re Microsoft Corp.*,
630 F.3d 1361 (Fed. Cir. 2011) ............................................................................1

*In re Morgan Stanley*,
417 F. App'x 947 (Fed. Cir. 2011) ..................................................................3, 13

*In re Nintendo Co., Ltd.*,
589 F.3d 1194 (Fed. Cir. 2009) ("*Nintendo I*") ..............................................11, 14

*In re Nintendo Co., Ltd.*,
544 F. App'x. 934 (Fed. Cir. 2013) ("*Nintendo II*") .........................................7, 8

*In re TS Tech USA Corp.*,
551 F.3d 1315 (Fed. Cir. 2008) ....................................................................9, 10, 11

*In re Verizon Bus. Network Servs., Inc.*,
635 F.3d 559 (Fed. Cir. Mar. 23, 2011) ..............................................................13

*In re Vistaprint Ltd.*,
628 F.3d 1342 (Fed. Cir. 2010) ..........................................................................13

### TABLE OF AUTHORITIES
#### (Continued)

**Page(s)**

*In re Volkswagen AG*,
   371 F.3d 201 (5th Cir. 2004) ("*Volkswagen I*")...................................................9, 10

*In re Volkswagen of Am., Inc.*,
   545 F.3d 304 (5th Cir. 2008) ("*Volkswagen II*") ......................................1, 9, 11, 12

*In re Zimmer Holdings*,
   609 F.3d 1378 (Fed. Cir. 2010)..........................................................................1

*Liaw Su Teng v. Skaarup Shipping Corp.*,
   743 F.2d 1140 (5th Cir. 1984) ...........................................................................8

*Minka Lighting, Inc. v. Trans Flobe Imports, Inc.*,
   No. 3:02-cv-02538, 2003 WL 21251684 (N.D. Tex. May 23, 2003)....................................13

*Mobil Oil Corp. v. W.R. Grace & Co.*,
   334 F. Supp. 117 (S.D. Tex. 1971) .......................................................................8

*Orinda Intellectual Props. USA Holding Grp., Inc. v. Sony Corp.*,
   No. 2:08-CV-323, 2009 WL 3261932 (E.D. Tex. Sept. 29, 2009).........................................15

*Personalweb Techs., LLC v. Apple, Inc.*,
   No. 6:12-cv-660, 2014 WL 1689046 (E.D. Tex. Feb. 12, 2014)..........................................12

*Piper Aircraft Co. v. Reyno*,
   454 U.S. 235 (1981).........................................................................................9

*Realtime Data, LLC d/b/a IXO v. Apple Inc.*,
   No. 6:15-CV-885, slip op. (E.D. Tex. Apr. 18, 2016) ........................................................2, 15

*Realtime Data LLC d/b/a IXO v. Dropbox, Inc.*,
   No. 6:15-CV-465, 2016 WL 153860 (E.D. Tex. Jan. 12, 2016).................................... *passim*

*Realtime Data, LLC d/b/a IXO v. Morgan Stanley*,
   Nos. 6:09-CV-326, 327, 333, slip op. (E.D. Tex. Sept. 21, 2011)............................................2

*Realtime Data LLC d/b/a IXO v. Teradata Ops., Inc.*,
   Nos. 6:15-CV-463, 470, 2016 WL 235183 (E.D. Tex. Jan. 20, 2016)......................................2

*Realtime Data LLC d/b/a IXO v. Teradata Ops., Inc.*,
   Nos. 6:15-CV-463, 470, slip op. at 5 (E.D. Tex. Mar. 29, 2016) .................................. *passim*

*Realtime Data LLC v. Oracle Am. Inc.*,
   No. 6:16-cv-00088, Dkt. No. 24 (E.D. Tex. July 7, 2016) ......................................................8

*Rembrandt Vision Techs., L.P. v. Johnson & Johnson Vision Care, Inc.*,
   No. 2:09–cv–200–TJW, 2011 WL 2937365 (E.D. Tex. July 19, 2011)..................................14

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

*Shifferaw v. Emson USA*,
    No. 2:09-cv-54-TJW-CE, 2010 WL 1064380 (E.D. Tex. Mar. 18, 2010) ...............................7

*Toshiba Corp. v. Hynix Semiconductor, Inc.*,
    No. 3:04-cv-2391-L, 2005 WL 2415960 (N.D. Tex. Sept. 30, 2005) ......................................8

*Washington v. Trinity Indus., Inc.*,
    No. 2:13-CV-1041, 2015 WL 2353056 (E.D. Tex. May 15, 2015)........................................14

**STATUTES**

28 U.S.C. § 1391(c)(2)................................................................................................................9

28 U.S.C. § 1400(b) ...................................................................................................................9

28 U.S.C. § 1404 .......................................................................................................................1

28 U.S.C. § 1404(a) ...............................................................................................9, 10, 13, 15

35 U.S.C. § 271(c) .....................................................................................................................6

35 U.S.C. § 299 ......................................................................................................................1, 6

35 U.S.C. § 299(a)(1)................................................................................................................6

35 U.S.C. § 299(a)(2)................................................................................................................6

35 U.S.C. § 299(b)..................................................................................................................6, 8

CAL. CIV. PROC. CODE § 1989 (Deering 2012)............................................................................12

Leahy–Smith America Invents Act ("AIA"), Pub. Law. 112-29
    (September 16, 2012)..........................................................................................................1, 8

**RULES**

FED. R. CIV. P. 20......................................................................................................................6

FED. R. CIV. P. 45(b)(2)(C) .....................................................................................................12

PATENT L.R. 3–1 .......................................................................................................................2

Pursuant to 35 U.S.C. § 299 and 28 U.S.C. § 1404, Defendant Silver Peak Systems, Inc. ("Silver Peak") respectfully moves the Court for an order severing the claims against Silver Peak and transferring those claims to the Northern District of California.

## INTRODUCTION

The claims of Plaintiff Realtime Data LLC ("Realtime") against Defendant Silver Peak should be severed from those against the other defendants in this Action and transferred to the Northern District of California.

The joinder provisions of the America Invents Act ("AIA") mandate severance.  The inclusion of claims against Hewlett Packard Enterprise Co. ("HPE") and Hewlett Packard Enterprise Services, LLC ("HPES") is a transparent and improper attempt by Realtime to avoid transfer, and their inclusion directly contravenes the requirements of the AIA.  Even if joinder were permissible, this Court should exercise its discretion to sever in order to facilitate transfer.

Once severed, the claims against Silver Peak should be transferred to the "clearly more convenient" forum in the Northern District of California.  *See In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ("*Volkswagen II*").  Silver Peak is headquartered in that District, and all of its relevant documents and witnesses are located there, as are several likely third-party witnesses.  Silver Peak has no meaningful contacts with this District that could weigh against transfer.  Realtime is headquartered in New York, and its witnesses reside there.  To the extent that it has contacts with this District, those contacts were created for purposes of litigation and must be disregarded.  *See, e.g.*, *In re Microsoft Corp.*, 630 F.3d 1361, 1364–65 (Fed. Cir. 2011); *In re Zimmer Holdings*, 609 F.3d 1378, 1381 (Fed. Cir. 2010); *In re Hoffmann-La Roche Inc.*, 587 F.3d 1336–37 (Fed. Cir. 2009).

In light of these facts, the Northern District of California is the clearly more convenient forum for this dispute.  Indeed, this Court has already transferred numerous cases filed by

Realtime in this District involving similarly situated defendants.[1]  Silver Peak therefore respectfully requests that this Court grant sever the claims against Silver Peak and transfer those claims to the Northern District of California.

## STATEMENT OF FACTS

### I.    THIS ACTION

On February 26, 2016, Realtime filed this lawsuit accusing Silver Peak, HPE, and HPES of infringing U.S. Patent Nos. 7,161,506; 9,054,728; 8,643,513; 9,116,908; and 7,415,530, and later amended its complaint to allegations against add new HPE products but making no further allegations regarding Silver Peak.  *See generally* Dkt. No. 36.  Realtime alleges infringement by Silver Peak's NX series WAN optimization devices and its VX series virtual WAN optimization software.  *Id.* ¶¶ 13, 37, 62, 75, 95.  The Amended Complaint separately alleges infringement by HPE/HPES's 3PAR StoreServ, HP Connected Backup, and HP LiveVault products.  *Id.* ¶¶ 28, 52, 86, 112.  The only purported overlap between the allegations against Silver Peak on one hand, and HPE/HPES on the other, asserts infringement of two of the asserted patents against Silver Peak's VX software, which Realtime alleges can run on HPE servers.  *Id.* ¶¶ 14, 38.

But Realtime's infringement contentions tell a different story.  Realtime served separate Patent L.R. 3–1 contentions on each defendant on August 15, 2016.  *See* Decl. of Lauren Whittemore in Support of Silver Peak's Mot. to Sever and Transfer Venue ("Whittemore Decl.") ¶¶ 2, 15, Exs. A, N.  The infringement contentions Realtime served on Silver Peak do not mention any HPE or HPES products, and vice versa.  *Id.*  Silver Peak now seeks to transfer the

---

[1] *See, e.g.*, *Realtime Data, LLC d/b/a IXO v. Apple Inc.*, No. 6:15-CV-885, slip op. at 1 (E.D. Tex. Apr. 18, 2016); *Realtime Data LLC d/b/a IXO v. Dropbox, Inc.*, No. 6:15-CV-465, 2016 WL 153860, at *6 (E.D. Tex. Jan. 12, 2016); *Realtime Data LLC d/b/a IXO v. Teradata Ops., Inc.*, Nos. 6:15-CV-463, 470, 2016 WL 235183, at *13 (E.D. Tex. Jan. 20, 2016) (holding adopted and objections overruled at *Realtime Data LLC d/b/a IXO v. Teradata Ops., Inc.*, Nos. 6:15-CV-463, 470, slip op. at 5 (E.D. Tex. Mar. 29, 2016)); *Realtime Data, LLC d/b/a IXO v. Morgan Stanley*, Nos. 6:09-CV-326, 327, 333, slip op.  at 1 (E.D. Tex. Sept. 21, 2011).

claims against it to the Northern District of California, where it maintains its principal place of business.  Dkt. No. 36 ¶ 2; Decl. of Eric Yeaman in Support of Silver Peak's Mot. to Sever and Transfer Venue ("Yeaman Decl.") ¶ 3.

## II.   THE PARTIES

### A.   Plaintiff Realtime Data LLC

Realtime is "a non-practicing entity headquartered in New York."  *In re Morgan Stanley*, 417 F. App'x 947, 948 (Fed. Cir. 2011) (designated non-precedential); *see also Teradata*, 2016 WL 235183, at *1; *Dropbox*, 2016 WL 153860, at *1.  Realtime's witnesses reside in New York. *Teradata*, 2016 WL 235183, at *4; *Dropbox*, 2016 WL 153860, at *2.  Realtime maintains an office in Tyler, where it houses physical devices, prototypes, source code, and demonstration software, but the relevance of those documents to its patent assertion litigation remains unclear. *Teradata*, 2016 WL 235183, at *2–3; *Dropbox*, 2016 WL 153860, at *2–3.  Finally, Realtime's counsel is located in Los Angeles, California.  Whittemore Decl. ¶ 3, Ex. B.

### B.   Defendant Silver Peak Systems, Inc.

Silver Peak is headquartered in Santa Clara, California, 5.6 miles from the San Jose courthouse for the Northern District of California.  *See* Yeaman Decl. ¶ 3; Whittemore Decl. ¶ 4, Ex. C.  Silver Peak designs and creates products for wide area network optimization, including hardware and software products for accelerating application performance over long distances. Yeaman Decl. ¶ 4.  Silver Peak's products and services are not directed to any specific states or districts.  *Id.*  The accused products were designed and developed by employees at Silver Peak's headquarters in the San Francisco Bay Area.  *Id.* ¶ 4; Decl. of David Hughes in Support of Silver Peak's Mot. to Sever and Transfer Venue ("Hughes Decl.") ¶ 3.  Silver Peak has 212 employees. The vast majority of the employees who are involved in the development of Silver Peak's products work in the company's California headquarters.  Yeaman Decl. ¶ 3.  Silver Peak's

evidence—technical documents, source code, sales, marketing, and financial information—is also located and maintained in the San Francisco Bay Area. *Id.* ¶ 5.

Silver Peak has no office, storage, distribution or manufacturing facility, nor any bank account, address, or telephone listing within this District. *Id.* ¶ 6. Although Silver Peak has two sales employees who work virtually from their own homes in this District, those employees do not work on the development or functionality of the accused products, and they report to supervisors in Arizona and California. *Id.* Silver Peak does not maintain any technical, marketing, or financial records produced in the ordinary course of business relating to the accused products in this District. *Id.* ¶¶ 5, 6. For fiscal years 2014-2016, only 0.5% of Silver Peak's revenue came from customers located in the Eastern District of Texas. *Id.* ¶ 7.

Silver Peak employees who work and live in Northern California are expected to testify in this case. *Id.* ¶ 8. Due to the small size of Silver Peak's workforce and the pivotal role its top officers and executives played in developing the accused products, it would be costly and inconvenient for Silver Peak to have those executives and employees travel to this District. *Id.* ¶ 9-10. These costs for travel and reduced productivity could largely be avoided if those witnesses could remain in Northern California. *Id.* ¶ 9. Overall, it would be far more convenient and much less disruptive for Silver Peak if this case were to proceed in California. *Id.* ¶ 11.

### C.      Relevant Third Parties

Silver Peak is unaware of any relevant third parties located in this District, but several are located in Northern California. These third parties, who would be subject to compulsory process in the Northern District of California, but not in this District, include former Silver Peak employees John Burns (Software Architect engineer) and Marc Trimuschat (Vice President of Business Development and Global Alliances), both of whom reside in the San Francisco Bay Area and would likely testify at trial if possible. *Id.* ¶ 10; Whittemore Decl. ¶ 5, Ex. D.

4

Other relevant potential non-party witnesses residing in the San Francisco Bay Area include numerous authors of prior art patents and references likely at issue in this case.  Dr. Ke-Chiang Chu is an inventor on U.S. Patent Nos. 5,467,087 and 5,150,430.[2]  Whittemore Decl. ¶ 6 Ex. E.  Dr. Chu lives in Saratoga, California within the Northern District of California.  *Id.* ¶ 7, Ex. F.  Dr. Chu's '430 patent was cited as part of reexamination proceedings against one of the patents-in-suit and therefore is likely to be relevant to claim construction, as well as Silver Peak's invalidity defenses.  *Id.* ¶ 8, Ex. G.

Dr. Randy Katz developed the Bay Area Research Network System while at U.C. Berkeley.  This system, which is described in a reference titled "The Bay Area Research Wireless Access Network" and published in 1996, appears to have used multiple different compression techniques depending on the nature of the data, which is the subject matter of the asserted patents.  *Id.* ¶ 9, Ex. H.  Dr. Katz continues to work at U.C. Berkeley and resides in San Francisco.  *Id.* ¶¶ 10-11, Exs. I, J.  In addition, Joy Aloysius Thomas is an inventor named on U.S. Patent No. 5,870,036 ("Adaptive multiple dictionary data compression") and resides in the San Francisco Bay Area.  *Id.* ¶¶ 12-13, Exs. K, L.

Finally, the IBM 3494/3495 Tape Library Dataserver, which supports the IBM 3490 and 3590 Tape Subsystem and Magstar Tape Drive was made and sold by IBM as early as August 8, 1995, and was designed and developed by IBM's International Technical Support Organization in San Jose, California.  *Id.* ¶ 14, Ex. M.

Silver Peak is likely to rely on the above prior art and associated documentation regarding the prior art systems and witnesses to support its invalidity defenses.  *Id.* ¶¶ 6-14.

---

[2] These patents are assigned to Apple Inc. and Stanford University, respectively—both of which are located in the Northern District of California.  Whittemore Decl. ¶ 6, Ex. E.

**ARGUMENT**

## I.    THE CASE AGAINST SILVER PEAK SHOULD BE SEVERED

### A.    The Claims Against Silver Peak Do Not Arise Out of the Same Transaction or Occurrence as the Claims Against HPE and HPES

35 U.S.C. § 299 provides that accused infringers may not be joined in the same action unless the plaintiff's claims arise "out of the same transaction, occurrence, or series of transactions or occurrences [involving] the same accused product or process."  35 U.S.C. § 299(a)(1).  The suit must also involve questions of fact common to all defendants.  *Id.* § 299(a)(2).  This requirement is not satisfied unless "there is substantial evidentiary overlap in the facts giving rise to the cause of action against each defendant."  *In re EMC Corp.*, 677 F.3d 1351, 1358 (Fed. Cir. 2012) (addressing pre-AIA joinder under Rule 20 of the Federal Rules of Civil Procedure).  Accused infringers may not be consolidated for trial "based solely on allegations that they have each infringed the patent or patents in suit."  35 U.S.C. § 299(b).

This action fails to satisfy these statutory requirements for joinder.  The claims against HPE and HPES are not material to Realtime's claims against Silver Peak or Silver Peak's defenses in this case.  Realtime's infringement contentions identify only Silver Peak products and lack any mention of HPE or HPES. Whittemore Decl. ¶ 15, Ex. N.  Silver Peak's accused software products run on any third-party servers and switches—i.e., any "staple article or commodity of commerce suitable for substantial noninfringing use"—not simply HPE hardware. 35 U.S.C. § 271(c); *see* Whittemore Decl. ¶ 16, Ex. O.  Adjudication of the claims against Silver Peak, therefore, would dispose of any claims against HPE/HPES involving Silver Peak software, even if such claims had appeared in Realtime's infringement contentions—which they do not. Furthermore, Realtime is not permitted to recover twice for customers running Silver Peak's software on HPE servers, and therefore severing and transferring Silver Peak's case to California

poses no prejudice to Realtime.  *Shifferaw v. Emson USA*, No. 2:09-cv-54-TJW-CE, 2010 WL 1064380, at *3 (E.D. Tex. Mar. 18, 2010).

Although Realtime's complaint alleges a business relationship between Silver Peak and "HPE/HPES," Realtime pleads no facts to support any relationship between Silver Peak and HPES, and it is clear that a relationship exists only between Silver Peak and HPE—the entity that designs and manufactures the accused servers and switches.  Dkt. No. 36 ¶ 5 n.2-3; *see also* Whittemore Decl. ¶ 17, Ex. P (making no mention of HPES); Whittemore Decl. ¶ 18, Ex. Q (showing accused products).  While Silver Peak formed a marketing relationship with Hewlett Packard prior to the creation of HPE, these entities have not jointly developed or sold any products.  Hughes Decl. ¶ 6.  The accused HPE/HPES products and services, including 3PAR StoreServ, HP Connected Backup, and HP LiveVault, have no relation to Silver Peak.  *Id.* ¶ 4.

Neither the fact that Silver Peak software can run on HPE hardware nor the marketing relationship between Silver Peak and HPE creates the requisite logical relationship or aggregate of operative facts permitting joinder.  *See EMC*, 677 F.3d at 1358.  Regarding the former, HPE/HPES can "add little to nothing regarding how the technology underlying the accused products"—here, Silver Peak's software—"works."  *In re Nintendo Co., Ltd.* ("*Nintendo II*"), 544 F. App'x. 934, 941 (Fed. Cir. 2013).  As to the latter, Realtime's complaint is devoid of allegations addressing how the marketing relationship between Silver Peak and HPE could change the fact that Silver Peak's own software stands as the sole basis for the claims against it. Given the immateriality of HPE/HPES to Realtime's claims against Silver Peak and the lack of connection between Silver Peak to Realtime's claims against HPE/HPES concerning the 3PAR StoreServ, HP Connected Backup, and HP LiveVault products, there is no evidentiary overlap between the two.  The only real connection between the parties is that they involve the same

patents, and the AIA expressly forbids joinder under such circumstances.  35 U.S.C. § 299(b).

### B.     This Court May Sever To Facilitate Transfer

Even if severance were not mandatory in this case, this Court should exercise its

discretion sever the claims against Silver Peak.  "Rule 21 provides courts with considerable

latitude to order severance solely for purposes of facilitating transfer."  *Nintendo II*, 544 F. App'x

at 940.  It is well-established that "[i]f . . . suit might have been brought against one or more

defendants in the court to which transfer is sought, the claims against those defendants may be

severed and transferred while the claims against the remaining defendant, for whom transfer

would not be proper, are retained."  *Liaw Su Teng v. Skaarup Shipping Corp.*, 743 F.2d 1140,

1148 (5th Cir. 1984), *overruled on other grounds by In re Air Crash Disaster Near New Orleans*,

821 F.2d 1147 (5th Cir. 1987).  This is particularly true where the patent infringement claims

asserted against any remaining defendants may be secondary to the primary infringement claims

to be severed and transferred.  *See, e.g.*, *Balthasar Online, Inc. v. Network Solutions, LLC*, 654 F.

Supp. 2d 546, 552–53 (E.D. Tex. 2009); *Toshiba Corp. v. Hynix Semiconductor, Inc.*, No. 3:04-

cv-2391-L, 2005 WL 2415960, at *4–6 (N.D. Tex. Sept. 30, 2005); *Mobil Oil Corp. v. W.R.

Grace & Co.*, 334 F. Supp. 117, 121–22 (S.D. Tex. 1971).  Moreover, as the above discussion

makes clear, the purported connection between Silver Peak and the other defendants does not

withstand serious scrutiny.  *See supra* Argument Section I.A.

The Court should not encourage Realtime to subject businesses located in this forum to

burdensome and costly lawsuits solely for venue purposes.  *See Balthasar*, 654 F. Supp. 2d at

552–53.  HPE and HPES are already embroiled in multiple suits against Realtime in this District

involving four of the five patents-in-suit here.  *See, e.g.*, *Realtime Data LLC v. Oracle Am. Inc.*,

No. 6:16-cv-00088, Dkt. No. 24 (E.D. Tex. July 7, 2016).  The Court should therefore give little

weight to any of Realtime's protestations of inconvenience, and Realtime's improper joinder of

HPE and HPES should not impede transfer of the case against Silver Peak.

## II.  THE CASE AGAINST SILVER PEAK SHOULD BE TRANSFERRED TO THE NORTHERN DISTRICT OF CALIFORNIA

A court may transfer a civil action to any court in which the action could have originally been brought.  28 U.S.C. § 1404(a).  "The underlying premise of § 1404(a) is that courts should prevent plaintiffs from . . . subjecting defendants to venues that are inconvenient under the terms of § 1404(a)."  *Volkswagen II*, 545 F.3d at 313.  Summarizing Fifth Circuit law, the Federal Circuit has explained:

> The "private" interest factors include:  (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make a trial easy, expeditious and inexpensive.  The "public" interest factors to be considered are:  "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflicts of laws [or in] the application of foreign law."

*In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981); quoting *Volkswagen II*, 545 F.3d at 315).  None of the private or public interest factors favors keeping the claims against Silver Peak in this District.

### A.  This Case Could Have Been Brought In Northern California

The threshold requirement for a transfer of venue under Section 1404(a) is whether the case could have been brought in the judicial district in which transfer is sought.  *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"); *see also Volkswagen II*, 545 F.3d at 313.  Silver Peak is subject to personal jurisdiction there because it is headquartered in that district.  Yeaman Decl. ¶ 3; 28 U.S.C. § 1391(c)(2); *see also* 28 U.S.C. § 1400(b).  Realtime could have brought its case against Silver Peak in the Northern District of California and no obstacle prevents the Court from transferring the case against Silver Peak there.

B.     **The Northern District of California Is Clearly More Convenient Than This District**

1.     **The Private Interest Factors Favor Transfer to the California**

a.     **Convenience Heavily Favors Transfer Because the Parties and All Willing Witnesses Are Located Outside This District**

The Federal Circuit has applied the Fifth Circuit's "100-mile" rule in analyzing whether a particular venue is convenient for witnesses in patent cases. *See TS Tech,* 551 F.3d at 1320. "When the distance between an existing venue . . . and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Id.* Given this Court's distance from Silver Peak's headquarters in California, litigating in this District would impose an undue burden on the key executives and employees with relevant knowledge of the accused products located in California who may need to testify on technical and financial matters in this case. Yeaman Decl. ¶ 8. These witnesses would need to incur significant travel costs in connection with approximately 1800-mile trips on multiple plane flights. Whittemore Decl. ¶¶ 19-20, Exs. R, S.

Silver Peak's witnesses in Northern California include founder and CEO David Hughes, Senior VP of Products Damon Ennis, and CFO Eric Yeaman. Yeaman Decl. ¶ 8. Due to the small size of Silver Peak's workforce, it would be highly disruptive to Silver Peak's business if these key personnel must spend an entire day simply traveling to and from Tyler—time that could otherwise be spent productively at work. Yeaman Decl. ¶ 9; *see In re Acer Am. Corp.*, 626 F.3d 1252, 1255 (Fed. Cir. 2010); *see also Volkswagen I*, 371 F.3d at 205.

In contrast, Realtime's witnesses are primarily located in New York. *Teradata*, 2016 WL 235183, at *4; *Dropbox*, 2016 WL 153860, at *2. Realtime's litigation connections to this District aside, appearing in California would actually be *more* convenient for Realtime. Travel for Realtime's New York witnesses to San Francisco is less costly and less time-consuming than

10

travel to Tyler.  *Compare* Whittemore Decl. ¶ 21, Ex. T *and id.* ¶ 22, Ex. U.  Flights from New York to Tyler require at least one stop and cost between $590 and $1,017.  *Id.* ¶ 21, Ex. T.  In contrast, nonstop flights from New York to San Francisco are available and cost between $463 and $959.  *Id.* ¶ 22, Ex. U.  California is a more convenient venue for all involved.  And where, as here, no witnesses reside in this District, the geographic centrality of the Eastern District of Texas is immaterial.  *In re Genentech, Inc.*, 566 F.3d 1338, 1344 (Fed. Cir. 2009).

Where most witnesses and evidence are closer to the transferee venue and few or no convenience factors favor the venue chosen by the plaintiff, transfer to a more convenient venue is appropriate.  *See, e.g.*, *Acer*, 626 F.3d at 1254–56; *Hoffman-La Roche*, 587 F.3d at 1335–36; *TS Tech*, 551 F.3d at 1321.  This factor weighs strongly in favor of transfer.

**b.      The Relevant Documents Are Either Located or Easily Accessed in California**

Despite technological advances that lighten the relative inconvenience of transporting large amounts of documents across the country, this factor remains part of the transfer analysis. *Volkswagen II*, 545 F.3d at 316.  This factor turns upon which party—usually the accused infringer—will most likely have the greater volume of relevant documents.  *See, e.g.*, *id.* at 314–15; *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1199 (Fed. Cir. 2009) ("*Nintendo I*"); *Genentech*, 566 F.3d at 1345.  The evidence regarding Silver Peak's development, engineering, sales, and marketing activities are located in Northern California.  Yeaman Decl. ¶ 5.

To the extent Realtime claims that it maintains documents in this District, this Court has already repeatedly questioned the relevance of such documents.  *Teradata*, 2016 WL 235183, at *2–3; *Dropbox*, 2016 WL 153860, at *2–3.  This Court has also repeatedly determined that the location of Realtime's documents is outweighed in the transfer analysis by the fact that "the bulk of the relevant evidence usually comes from the accused infringer"—Silver Peak.  *Teradata*,

2016 WL 235183, at *3 (citing *Genentech*, 566 F.3d at 1345); *Dropbox*, 2016 WL 153860, at *3

(same); *see also Personalweb Techs., LLC v. Apple, Inc.*, No. 6:12-cv-660, 2014 WL 1689046, at

*11 (E.D. Tex. Feb. 12, 2014).   This factor weighs in favor of transfer.

      **c.**    **The Availability of Compulsory Process for Relevant Third-
Party Witnesses Favors Transfer**

The availability of compulsory process to secure the attendance of third-party witnesses

also strongly favors transfer.   This factor weighs more heavily in favor of transfer when more

third-party witnesses reside within the transferee venue.   *See Volkswagen II*, 545 F.3d at 316.

This factor weighs the heaviest in favor of transfer when a transferee venue is said to have

"absolute subpoena power."   *Id.*

Potential third-party witnesses are scarce (possibly nonexistent) in Texas, but abundant in

California.   As noted above, former Silver Peak employees with relevant information reside in

the Bay Area and will likely testify at trial.   Yeaman Decl. ¶ 10.   Silver Peak is aware of two

non-party former employees and at least three non-party prior art witnesses who reside in the

Bay Area, but are outside the subpoena power of this Court.   *See supra* Statement of Facts

Section II.C.   Silver Peak is not aware of any non-party witnesses with relevant information who

reside in this District.

The Northern District of California has absolute subpoena power over all of these

potential third-party witnesses, whereas this District lacks subpoena power over all of them.

FED. R. CIV. P. 45(b)(2)(C); CAL. CIV. PROC. CODE § 1989 (Deering 2012); *Collins v. JC Penney

Life Ins. Co.*, No. 3:01-cv-04069, 2002 WL 505931, at *3–4 (N.D. Cal. Apr. 1, 2002) *see also

Volkswagen II*, 545 F.3d at 316.   In the Northern District of California, both Realtime and Silver

Peak would be able to compel any of these third-party witnesses to attend trial in order to present

its case.   This factor weighs in favor of transfer.

**d.    No Practical Problems Favor Litigation in This District
Compared to the Northern District of California**

Transfer to the Northern District of California poses no practical problems for any party.

Although Realtime's witnesses and documents are located in New York, such witnesses would

have to travel regardless of whether they must appear in Texas or California.  *Teradata*, 2016

WL 235183, at *3–4; *Dropbox*, 2016 WL 153860, at *2, 4.

Nor should this Court give serious weight to Realtime's choice of forum, which is

"neither conclusive nor determinative."  *In re Horseshoe Entm't,* 305 F.3d 354, 359 (5th Cir.

2003).  A plaintiff's choice of forum also receives less deference where," as here, "most of the

operative facts occurred outside the district."  *Minka Lighting, Inc. v. Trans Flobe Imports, Inc.*,

No. 3:02-cv-02538, 2003 WL 21251684, at *1, 4 (N.D. Tex. May 23, 2003).  Neither Realtime

nor Silver Peak resides here.  Silver Peak developed and sells the accused products from its

California headquarters, and end users may purchase the products anywhere in the country.

Yeaman Decl. ¶ 7.  Given the lack of meaningful connections to this forum, the inconvenience

that Silver Peak and numerous third parties face outweighs Realtime's decision to file here.

This case remains in its earliest stages and this Court's prior experience with the patents-

in-suit does not support denying transfer.  In another Realtime case, the Federal Circuit held that

"the proper administration of justice may be to transfer to the far more convenient venue even

when the trial court has some familiarity with a matter from prior litigation."  *Morgan Stanley*,

417 F. App'x at 949.  "To interpret § 1404(a) to hold that any prior suit involving the same patent

can override a compelling showing of transfer would be inconsistent with the policies underlying

§ 1404(a)."  *In re Verizon Bus. Network Servs., Inc.*, 635 F.3d 559, 562 (Fed. Cir. Mar. 23, 2011)

(quoting *In re Vistaprint Ltd.*, 628 F.3d 1342, 1347 n.3 (Fed. Cir. 2010)).

Thus, all private interest factors weigh heavily in favor of transferring this case.

### 2.   The Public Interest Factors Also Support Transfer to California

#### a.   Transfer Would Not Create Administrative Difficulties in the Northern District of California

No serious concerns regarding court congestion in the Northern District of California weigh against transfer.  In contrast, this Court has an incredibly active docket.  *See Washington v. Trinity Indus., Inc.*, No. 2:13-CV-1041, 2015 WL 2353056, at *4 (E.D. Tex. May 15, 2015) ("Since the first of this year there have been well over 500 motions filed with this Court.").  The median time from filing to trial in this District for the 12-month period ending June 30, 2016 was 20.7 months, compared with 24.6 months in the Northern District of California—a neutral difference.  Whittemore Decl. ¶ 23, Ex. V; *see also GeoTag, Inc. v. Aromatique, Inc.*, No. 2:10–cv–570, 2013 WL 8349856, at *5 (E.D. Tex. Jan. 14, 2013); *Rembrandt Vision Techs., L.P. v. Johnson & Johnson Vision Care, Inc.*, No. 2:09–cv–200–TJW, 2011 WL 2937365, at *3 (E.D. Tex. July 19, 2011).  This District also saw 25% more cases filed per judge than the Northern District of California for the same period.  *See id.* (546 total case filings per judge in the Northern District of California versus 728 in this District).  This factor favors transfer.

#### b.   The Interest in Having Local Disputes Decided at Home Strongly Favors Transfer to the Northern District of California

The second public factor examines which district has the greater factual connection to the underlying litigation.  Interests that "could apply to virtually any judicial district or division in the United States," such as the nationwide sale of infringing products, are disregarded in favor of particularized local interests.  *Volkswagen II*, 545 F.3d at 317–18; *Nintendo I*, 589 F.3d at 1198.

The Northern District of California has a greater particularized interest in this case.  Silver Peak's products were developed in Northern California, the patents-in-suit were invented there, and Silver Peak's only relevant connection with this District arises from the nationwide sale of its products.  *See* Yeaman Decl. ¶¶ 4-7; Dkt. No. 36 ¶¶ 4-5.  The Northern District of

California has a significant localized interest in this lawsuit because Silver Peak is headquartered there, and its key employees and third party witnesses reside there.  Yeaman Decl. ¶¶ 3, 8-10; *see also Volkswagen II*, 545 F.3d at 317–18; *EON Corp. IP Holdings, LLC v. Sensus, USA, Inc.*, 2:10-CV-448, 2012 WL 122562, at*5 (E.D. Tex. Jan. 9, 2012).

Additionally, multiple prior art sources or systems are located in Northern California, as are numerous defendants from previous Realtime actions who may have information regarding licensing activities relevant to damages calculations.  *See* Whittemore Decl. ¶¶ 5-14; *see also Teradata*, 2016 WL 235183, at *6 (finding that Northern District of California had a greater local interest in another Realtime case involving the '513 and '530 patents); *Dropbox,* 2016 WL 153860, at *6; *Apple*, No. 6:15-CV-885, Dkt. No. 31 at 1.

Although Realtime has asserted in the past that its local offices give this District a local interest, this Court has determined that the transferee venue that is home to witnesses and the bulk of evidence has a greater interest.  *Teradata*, 2016 WL 235183, at *6; *Dropbox*, 2016 WL 153860, at *5.  This factor therefore weighs in favor of transfer.

### c.     The Familiarity with the Governing Law and Potential Conflicts of Law Factors Are Neutral

Federal law governs patent infringement actions and therefore this District and the Northern District of California are equally capable of adjudicating the patent issues in this case. *See Orinda Intellectual Props. USA Holding Grp., Inc. v. Sony Corp.*, No. 2:08-CV-323, 2009 WL 3261932, at *4 (E.D. Tex. Sept. 29, 2009).  No conflicts of laws questions exist in this case.

### CONCLUSION

For the foregoing reasons, Silver Peak respectfully requests the Court sever the claims against Silver Peak and transfer this action pursuant to Section 1404(a) to the Northern District of California.

Dated:   September 9, 2016                    Respectfully submitted,


                                             */s/ Michael J. Sacksteder*_____
                                             Michael J. Sacksteder, CSB No. 191605
                                             (Admitted E.D. Texas)
                                             msacksteder@fenwick.com
                                             Bryan A. Kohm, CSB No. 233276
                                             (Admitted E.D. Texas)
                                             bkohm@fenwick.com
                                             Lauren E. Whittemore, CSB No. 255432
                                             (Admitted E.D. Texas)
                                             lwhittemore@fenwick.com
                                             Kunyu Ching, CSB No. 292616
                                             (Admitted E.D. Texas)
                                             kching@fenwick.com
                                             FENWICK & WEST LLP
                                             555 California Street, 12th Floor
                                             San Francisco, CA  94104
                                             Telephone:    415.875.2300
                                             Facsimile:    415.281.1350

                                             Attorneys for Defendant
                                             SILVER PEAK SYSTEMS, INC.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically through the Court's ECF System in compliance with Local Rule CV-5(a) on September 9, 2016.


*/s/   Michael J. Sacksteder*
Michael J. Sacksteder


## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that counsel for Defendant has complied with L.R. 7(h) regarding this motion.  The motion is opposed.  On August 4, 2016 and September 9, 2016, the undersigned counsel for Defendant met and conferred with Jeffrey Liao, counsel for Plaintiff. No agreement could be reached because Plaintiff is opposed to transferring this case to the Northern District of California.  Discussions have conclusively ended in an impasse, leaving an open issue for the Court to resolve.


*/s/ Lauren E. Whittemore*
Lauren E. Whittemore