# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | |
|---|---|
| REALTIME DATA LLC d/b/a IXO,<br><br>Plaintiff,<br><br>v.<br>HEWLETT PACKARD ENTERPRISE CO., HP ENTERPRISE SERVICES, LLC, AND SILVER PEAK SYSTEMS, INC.,<br><br>Defendants. | **Case No. 6:16-cv-00086-RWS-JDL** |

**PLAINTIFF REALTIME DATA LLC'S OPPOSITION TO DEFENDANT SILVER PEAK SYSTEMS, INC.'S MOTION TO SEVER AND TRANSFER VENUE**

# TABLE OF CONTENTS

Page(s)

I. INTRODUCTION ........................................................................................................... 1

II. BACKGROUND .............................................................................................................. 2

    A. Realtime Has Long Standing Ties To This District............................................... 2

    B. Silver Peak and HP. ............................................................................................... 2

    C. Silver Peak Has Many Ties To Texas.................................................................... 3

III. SEVERANCE OF THIS CASE IS NOT WARRANTED ............................................... 3

    A. The Claims Against Silver Peak Arises Out of the Same Transaction or Occurrence as the Claims Against HP. ................................................................... 3

    B. Severance and Transfer Is Rarely Appropriate, And Is Not Appropriate Here............ 5

IV. SILVER PEAK CANNOT SATISFY ITS BURDEN TO TRANSFER THIS ACTION..... 7

    A. Transfer Should Be Denied Because Severance From HP Is Unwarranted. ................ 7

    B. The Private Interest Factors Weight Against Transfer. .............................................. 8

        1. N.D. Cal is not more convenient for many of the potential witnesses. .............. 8

        2. The sources of proof are just as accessible, if not more so, in E.D. Tex. compared to N.D. Cal. ........................................................................................ 10

        3. N.D. Cal does not possess more relevant subpoena power. ............................. 11

        4. The "practical problems" and judicial economy here strongly weigh against transfer. .................................................................................................. 12

    C. The Public Interest Factors Weigh Against Transfer ................................................ 14

        1. Administrative difficulties and court congestion.............................................. 14

        2. Texas has a greater interest............................................................................... 14

        3. The other public interest factors are neutral. .................................................... 15

V. CONCLUSION............................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adaptix, Inc. v. Verizon Wireless*
 No. 6:15-cv-00045-RWS-JDL (E.D. Tex. Aug. 12, 2015) ...................................................... 12
*Adrain v. Genetec Inc.*
 2009 U.S. Dist. LEXIS 86855 (E.D. Tex. Sept. 22, 2009) ..................................................... 14
*Adrain v. Genetec, Inc.*, 2009 WL 3063414 (E.D. Tex. Sept. 22, 2009) ........................................ 6
*Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1519 (10th Cir. 1991) .............. 6
*Coll v. Abaco Operating LLC*, 2009 WL 2857821 (E.D. Tex. Sept.1, 2009) ................................ 6
*Dekalb Genetics Corp. v. Syngenta Seeds, Inc.*, 2007 WL 1223510, *3 (E.D. Mo. Apr. 24, 2007)
 ........................................................................................................................................... 6
*Eolas Techs., Inc. v. Adobe Sys., Inc.*
 2010 U.S. Dist. LEXIS 104125 (E.D. Tex. Sept. 28, 2010) ................................................... 12
*In re Google Inc.*
 412 Fed. Appx. 295 (Fed. Cir. 2011) ..................................................................................... 13
*In re Verizon Bus. Network Servs. Inc.*
 635 F.3d 559 (Fed. Cir. 2011) ................................................................................................ 14
*In re Volkswagen of America, Inc.*, 545 F.3d 304, 314 fn.10 (5th Cir. 2008) ............................... 7
*Ingeniador, LLC v. Adobe Sys. Inc.*, No. 2:12-CV-00805-JRG, 2014 WL 105106, at *4 (E.D.
 Tex. Jan. 10, 2014) ................................................................................................................ 15
*J2 Glob. Commc'ns, Inc. v. Protus IP Sols., Inc.*, No. CIV A 6:08-CV-211, 2009 WL 440525, at
 *2 (E.D. Tex. Feb. 20, 2009) ................................................................................................. 10
*Lutron Elecronics v. Crestron Electronics,* 2010 WL 1529249, *2 (D. Ut. April 14, 2010) ......... 6
*Mondis Tech. Ltd. v. Top Victory Elecs. (Taiwan) Co.*
 2009 U.S. Dist. LEXIS 103394 (E.D. Tex. Oct. 23, 2009) .................................................... 14
*MyMail, Ltd. v. America Online, Inc.*, 223 F.R.D. 455, 458 (E.D. Tex. 2004) ............................. 6
*Nexus Display Techs. LLC v. Dell, Inc.*, No. 2:14-CV-762, 2015 WL 5043069, at *4 (E.D. Tex.
 Aug. 25, 2015). ...................................................................................................................... 11
*Plant Equip. Inc. v. Intrado Inc.*, No. CIVA 2-09-CV-395TJW, 2010 WL 2465358, at *3 (E.D.
 Tex. June 16, 2010) ............................................................................................................... 10
*Shifferaw v. Emson USA*, 2010 WL 1064380, *1 (E.D. Tex. Mar. 18, 2010) ............................... 5
*Sky Tech. LLC v. IBM Corp.*, Case 2:03-cv-00454-DF-CMC, Order, Dkt. No. 91 (E.D. Tex. Mar.
 22, 2005) .................................................................................................................................. 6
*Texas Data Co., LLC v. Target Brands, Inc.*, 771 F. Supp. 2d 630, 638 (E.D. Tex. 2011) ........... 7
*Toshiba Corp. v. Hynix Semiconductor, Inc.*, 2005 WL 2415960, *4 (N.D. Tex. Sept. 30, 2005) 6
*United Mine Workers v. Gibbs*, 383 U.S. 715, 724 (1966) ....................................................... 6, 8
*VirtualAgility, Inc. v. Salesforce.com, Inc.*, No. 2:13-CV-00011-JRG, 2014 WL 459719, at *5
 (E.D. Tex. Jan. 31, 2014). ..................................................................................................... 11

Plaintiff Realtime Data LLC ("Realtime") hereby responds in opposition to the motion to sever and transfer venue filed by Defendant Silver Peak Systems, Inc. ("Silver Peak").

## I. INTRODUCTION

Silver Peak cannot meet its "significant burden" to show that N.D. California is "clearly more convenient" than this District. As an initial matter, before Silver Peak's transfer motion can be granted, the Court must sever this case in two, separating co-defendant HP. Such severance is unwarranted because, among other things, Silver Peak and HP have a "joint HP/Silver Peak solution" that is accused in this case, including, *e.g.,* "HP Silver Peak VX" product. Severance should be denied, as it makes no sense to create two cases with overlapping products. If the Court denies severance, the transfer motion obviously fails. Silver Peak does not argue otherwise and HP has not joined Silver Peak's motion. Indeed, HP has a major presence in this District.

Silver Peak's transfer motion fails also because each of the relevant private and public interest factors weigh against transfer, or are neutral at best. For instance, Texas is home to many of Silver Peak's employees, former employees, major customers, and "most strategic partners." And Silver Peak concedes that "technological advances…lighten the relative inconvenience" of transporting documents (Mot. at 11). Transferring this case would only shift the inconvenience, costs, and burden from Silver Peak to Realtime, as all of Realtime's witnesses and documents are located much closer to this District than to California.

The factors regarding judicial economy also strongly weigh against transfer. For instance, severing this case from HP would create multiplicity of lawsuits involving the same plaintiff, the same asserted patents, and overlapping accused products and witnesses. Moreover, this Court has substantial experience from prior cases (the *Packeteer*, *MetroPCS*, *Actian*, and *Oracle* cases) over the last eight years with all of the asserted patents. Transferring this case to a court unfamiliar with the asserted patents would not only consume unnecessary judicial resources, but would also create a significant risk of inconsistent rulings. The interests of justice and convenience weigh heavily in favor of this Court. Silver Peak has not come close to carrying its burden on establishing that transfer is warranted.

## II. BACKGROUND

### A. Realtime Has Long Standing Ties To This District.

Realtime has a long history and presence in this District. Realtime opened an office in Tyler, Texas in October 2009, more than six years before filing of this case. Tashjian Decl. ¶5. Realtime's documents relating to its intellectual property development and licensing are located in the Tyler office, including patent file histories, licenses, physical devices and prototypes developed by Realtime, and other documents relating to the asserted patents. *Id.* Moreover, in September 2015, Realtime opened its second office in this District, in Plano, Texas. Realtime's electrical engineer, Deepika Pagala, works at the Plano office, assisting in the development of Realtime's intellectual property portfolio. *See* Ex. 2 at 32-35.

This Court is familiar with Realtime and its patents, having presided over Realtime's cases for eight years. For example, this Court presided over the *Packeteer* case (Case No. 6:08-cv-00144-LED-JDL) and the *MetroPCS* case (Case No. 6:10-cv-00493-RC-JDL) involving some of the same patents at issue in this case. This Court is also currently presiding over the consolidated *Actian* case (Lead Case No. 6:15-cv-00463-RWS-JDL) and *Oracle* case (Lead Case No. 6:16-cv-0088-RWS-JDL), involving the same or related patents as those at issue in this case. Over the years, this Court has issued multiple claim construction rulings and summary judgment orders involving the same or related patents, including this year.

In contrast, Realtime has no operations in California. The one Realtime case pending in N.D. California (*Realtime v. Apple* case) does not currently involve any patents that are related to the patents at issue in this case. The court in N.D. California has no prior experience with any of the asserted patents or related patents.

### B. Silver Peak and HP.

Defendants Hewlett Packard Enterprise Co. and HP Enterprise Services, LLC (collectively, "HP") are co-defendants in this case with Defendant Silver Peak. HP has a large operation center in this District, in Plano, Texas. Both Silver Peak and HP has admitted that they have a partnership alliance with each other. D.I. 52 at ¶5; D.I. 53 at ¶5.

Silver Peak and HP are joined in this case because they have a "joint HP/Silver Peak solution" that they call "HP Silver Peak VX." Ex. 1; *see also* D.I. 36 (complaint) at ¶13 ("infringing products include…Silver Peak WAN Optimization Appliances, including … VX Virtual Appliances"). The "HP Silver Peak VX" is a product that Silver Peak and HP "thoroughly test[] and certif[y]" and "deliver" "[t]ogether." Ex. 1.

C.   **Silver Peak Has Many Ties To Texas.**

In addition to a partnership alliance with HP (which has a large presence in this District), Silver Peak's "most strategic partner," Dell, is also based in Texas. Ex. 3 ("most strategic partners, Dell"). Silver Peak also touts about its major customers who are based in Texas, including in this District, such as Masergy, based in Plano, and Service King Collision Repair Centers, based in Richardson. Ex. 4-5. Texas is also home to a number of current and former Silver Peak employees, including Melanie Christiansen, Tracie Sirgusa, David Rogers, and Todd Cleveland. Ex. 3, 6-8.

III.  **SEVERANCE OF THIS CASE IS NOT WARRANTED**

"'Under the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged.'" *Content Guard Holdings Inc. v. Amazon.com Inc.*, 2015 WL 1263346, *1 (E.D. Tex. Mar. 19, 2015) (quoting *United Mine Workers of Am. V. Gibbs*, 383 U.S. 715, 724 (1966)).

A.   **The Claims Against Silver Peak Arises Out of the Same Transaction or Occurrence as the Claims Against HP.**

Silver Peak argues that joinder of it and HP is purportedly improper because the claims against it and HP do not allegedly arise out of the same transaction or occurrence. Mot. at 6. Silver Peak's argument appears to be based on its assertion that it does not "jointly develop[] or s[ell] any products." Mot. at 7. Silver Peak is wrong on the law and the facts.

Contrary to Silver Peak's suggestion, "joint liability is not required" for a joinder to be proper. *Content Guard*, 2015 WL 1263346 at *2. Indeed, "the fact that the defendants are independent actors does not preclude joinder." *Id.* "[I]ndependent defendants satisfy the

transaction-or-occurrence test of Rule 20 when there is a logical relationship between the separate causes of action." *Id.*

Silver Peak's argument regarding joinder also mischaracterizes the facts regarding Silver Peak's relationship with HP. Both Silver Peak and HP have admitted in their respective answers to Realtime's complaint that they have an alliance and that they were/are partners. D.I. 52 (HP's answer at ¶5) (HP admits…Silver Peak Systems, Inc. was a participant on the HP AllianceONE Program."); D.I. 53 (Silver Peak's answer at ¶5) ("Silver Peak admits that Silver Peak was a participant in HP's 'AllianceONE Partner' Program and that it is listed as an 'HP Networking Alliance Partner' on the hpe.com website."); *see also* Ex. 9.

Moreover, the alliance and partnership between Silver Peak and HP relate directly to the products accused in this case—WAN optimization systems. *See, e.g.,* D.I. 36 (Amended Complaint) at ¶13. For instance, Silver Peak's press release of October 2011 touts that "Silver Peak Extends Virtual WAN Optimization to HP Networking Solutions." Ex. 10 (https://www.silver-peak.com/news/press-releases/silver-peak-extends-virtual-wan-optimization-hp-networking-solutions); *see also, e.g.,* https://www.youtube.com/watch?v=6uVCkWcSxWo (Silver Peak's video explaining inter-workings of its WAN optimization product with HP). Silver Peak and HP has jointly published a "Solutions brief" whereby they stated that "Silver Peak …. Has partnered with HP … to overcome these [technical] challenges." Ex. 1 (Solutions brief). Silver Peak and HP also explained that they "integrat[e] Silver Peak's virtual WAN optimization with HP zl Switch Series." *Id.* at 1-2 ("integrated solution"). Silver Peak and HP emphasizes that they are "[w]orking together as a collaborative team … [to] deliver easily deployed WAN optimization solutions." *Id.* at 3.

Silver Peak and HP also jointly test the accused WAN optimization systems and deliver these accused systems together: "Together we [i.e., HP and Silver Peak] deliver validated … solutions that have been thoroughly tested and certified for interoperability in an HP Converged Infrastructure environment—able to handle any WAN workload." *Id.* And they call the WAN optimization product "***joint*** HP/Silver Peak solution" and "HP Silver Peak VX" product:

4



HP Silver Peak VX

*Id.*; *compare* D.I. 36 (complaint) at ¶13 ("infringing products include…Silver Peak WAN Optimization Appliances, including … VX Virtual Appliances").

In sum, there is more than sufficient logical relationship / evidentiary overlap between HP and Silver Peak. Indeed, Silver Peak and HP tout the accused products—WAN Optimization solutions such as the VX product—as "joint HP/Silver Peak solution" and represent to the public that HP and Silver Peak *together* "thoroughly test[]" the joint products that infringe the asserted patents. Silver Peak's argument fails; joinder of Silver Peak and HP is proper under §299.

B. **Severance and Transfer Is Rarely Appropriate, And Is Not Appropriate Here.**

"In most instances, the interests of justice would not be favored by such a severance and transfer." *Shifferaw v. Emson USA*, 2010 WL 1064380, *1 (E.D. Tex. Mar. 18, 2010) ("the court normally denies such severance and transfer request."). Indeed, "severance and transfer is only appropriate on rare occasions." *Lutron Elecronics v. Crestron Electronics,* 2010 WL 1529249, *2 (D. Ut. April 14, 2010); *see also Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1519 (10th Cir. 1991) ("severance and transfer under Rule 21 and § 1404(a) appropriate on rare occasions") (citing 3A Moore's Federal Practice ¶ 21.05[2] at 43-44).

This is because "[s]evering this case and creating multiple lawsuits would create problems that outweigh any alleged inconvenience of [the moving party] defending a suit in [plaintiff's chosen] forum." *Adrain v. Genetec, Inc.*, 2009 WL 3063414 (E.D. Tex. Sept. 22, 2009); *see also United Mine Workers v. Gibbs*, 383 U.S. 715, 724 (1966) ("Under the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; ***joinder of claims, parties and remedies is strongly encouraged***.") (emphasis added).

Not surprisingly, courts routinely deny severance where joinder is proper. *E.g., Coll v. Abaco Operating LLC*, 2009 WL 2857821 (E.D. Tex. Sept.1, 2009) (denying severance because joinder is proper); *Sky Tech. LLC v. IBM Corp.*, Case 2:03-cv-00454-DF-CMC, Order, Dkt. No. 91 (E.D. Tex. Mar. 22, 2005) (denying severance because joinder is proper); *MyMail, Ltd. v. America Online, Inc.*, 223 F.R.D. 455, 458 (E.D. Tex. 2004) ("[T]he Court finds that the UOL Defendants have been properly joined under Rule 20 and DENIES the motion to sever.").

"Severance and transfer are appropriate only if (1) the claim to be severed is peripheral to the remaining claims; (2) the adjudication of the remaining claims is potentially dispositive of the severed claim; and (3) the transfer of the remaining claims is warranted under § 1404(a)." *Dekalb Genetics Corp. v. Syngenta Seeds, Inc.*, 2007 WL 1223510, *3 (E.D. Mo. Apr. 24, 2007); *see also Cellular Comm. Equipment LLC v. HTC Corp.*, 2015 WL 11118110, *6 (E.D. Tex. Mar. 27, 2015). Silver Peak does not address any of these elements, and cannot meet any of them.

First, "severance should be granted **only when** the severed defendant [i.e., HP] is secondarily or peripherally involved in the litigation." *Toshiba Corp. v. Hynix Semiconductor, Inc.*, 2005 WL 2415960, *4 (N.D. Tex. Sept. 30, 2005) (emphasis added). Courts generally find that a claim is peripheral where the severed defendant is merely a reseller/retailer that sells the accused products. *See Innovative Automation, LLC v. Audio Video and Video Labs, Inc.*, 2012 WL 10816848, *5 (E.D. Tex. May 30, 2012). HP here is not merely a reseller/retailer for two independent reasons. For one, HP manufactures 3PAR StoreServ, HP Connected Backup, and HP LiveVault, all of which are products accused in this case. Moreover, even as to the joint accused product—the "HP Silver Peak VX" WAN Optimization solution (Ex. 1 (Solution brief))—HP is not merely a reseller/retailer. As explained above, the accused "joint HP/Silver Peak solution" is a product resulting from HP and Silver Peak "[w]orking together as a collaborative team," and they have "validated" and "tested" the product together. *Id.* HP is simply not a peripheral party in this litigation, and as such, severance is not warranted.

Second, severance should be denied also because the "adjudication of the severed claims [i.e., claims against Silver Peak] would [not] dispose of the remaining claims [i.e., claims against

6

HP]." *Cellular Comms.*, 2015 WL 11118110, *6. As explained above, this case involves numerous accused products, many of which Silver Peak concedes are purely HP products. Infringement of such purely HP products would not even be litigated in any severed case against Silver Peak, much less disposed of. Severing this case would create two actions involving some of the same accused products, raising issues of inconsistent orders and inefficiencies involving overlapping issues, discovery, and work. The Court should deny severance.

**IV. SILVER PEAK CANNOT SATISFY ITS BURDEN TO TRANSFER THIS ACTION.**

To prevail on a motion to transfer under §1404(a), there is "a ***significant burden*** on the movant to show good cause for the transfer." *In re Volkswagen of America, Inc.*, 545 F.3d 304, 314 fn.10 (5th Cir. 2008) ("*Volkswagen II*"); *Texas Data Co., LLC v. Target Brands, Inc.*, 771 F. Supp. 2d 630, 638 (E.D. Tex. 2011) ("[T]he Court, in accordance with the Fifth Circuit, recognizes the significance of the burden and does not take it lightly"). Defendants "must satisfy the statutory requirements and ***clearly demonstrate*** that a transfer is '[f]or the convenience of parties and witnesses, in the interest of justice.'" *Volkswagen II*, 545 F.3d at 315.

To satisfy this significant burden, Defendants must show that the Northern District of California is a "***clearly more convenient***" forum than this District. *Id.* The determination of whether Defendants have met their significant burden involves consideration of various private and public interest factors, as discussed below. *Id.* The factors are not exhaustive or exclusive, and no one factor "can be said to be of dispositive weight." *Id.*

**A. Transfer Should Be Denied Because Severance From HP Is Unwarranted.**

As explained above, this case should not be severed into two separate cases. Doing so would create two cases in different districts involving the same plaintiff, the same asserted patents, and overlapping accused products and witnesses.[1]

---

[1] "Severing this case and creating multiple lawsuits would create problems that outweigh any alleged inconvenience of [the moving party] defending a suit in [plaintiff's chosen] forum." *Adrain v. Genetec, Inc.*, 2009 WL 3063414, *2 (E.D. Tex. Sept. 22, 2009); *see also United Mine Workers v. Gibbs*, 383 U.S. 715, 724 (1966) ("Under the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; ***joinder of claims, parties and remedies is strongly encouraged***.") (emphasis added).

If the Court does not sever Silver Peak and HP here, then transfer is of course unwarranted. Indeed, Silver Peak does not even attempt to argue that transfer to California would be appropriate with HP. Nor could they. Both HP entities who are defendants have significant Texas operations, and one of them has its principal place of business in this District (Plano). D.I. 52 at ¶3. As such, the transfer factors would militate against a transfer if HP is included in the transfer consideration. As Silver Peak has done in its motion, the transfer analysis below assumes that HP is severed from Silver Peak in this case. Even if HP is excluded from consideration, transfer is unwarranted.

### B. The Private Interest Factors Weight Against Transfer.

#### 1. N.D. Cal is not more convenient for many of the potential witnesses.

Silver Peak has failed to show that transfer to California would be "clearly more convenient" for the party witnesses in this case. *See Volkswagen II*, 545 F.3d at 315. For many potential witnesses, transfer out of Texas would have no appreciable benefit or would be less convenient.

For instance, as Silver Peak confirms, "Silver Peak has two employees … in the Eastern District of Texas." D.I. 55-2 (Yeaman Decl.) at ¶6. These Silver Peak employees have relevant knowledge regarding sale and operation of the accused products. Moreover, Silver Peak fails to disclose that it has numerous other employees in Texas who have relevant information regarding the accused products, including, *e.g.*

- Tracie Siragusa, an "Alliance Manager at Silver Peak" located in Austin, Texas, who "train[s] sales teams on hardware product lines, software, and processes" including, e.g., "enterprise-grade WAN that leverages the Internet, while dramatically improving application performance and lowering networking costs." (Ex. 6);
- Melanie Christiansen, a "Sr. Manager" at Silver Peak located in Austin, Texas, who manages alliances "for one of Silver Peak's most strategic partners, Dell"—a Texas-based company. (Ex. 3)

While Silver Peak has yet to provide information regarding these and other Silver Peak personnel in Texas with knowledge relevant to this case, discovery will likely reveal many other party witnesses in Texas that work on the accused products.

As to the three potential party witnesses that Silver Peak identifies, the motion fails to allege with any specificity what type of relevant knowledge is held by these witnesses, or why they would be necessary at trial. Such vague, generalized statements that they have "relevant knowledge" (Mot. at 10) is insufficient to carry its burden on the transfer motion. *See Genentech*, 566 F.3d at 1343.

Silver Peak's assertion that it would somehow be inconvenienced by traveling to Texas is also undermined by the fact that it has significant business in Texas, and its employees travel frequently to Texas to, e.g., attend conferences and meetings with customers. For instance, Dell—a Texas company—is a "most strategic partner" of Silver Peak. Ex. 3 (Christiansen). HP—a company with significant Texas operations—is also an important partner of Silver Peak, as explained above. Moreover, Silver Peak attends and exhibits its products in Texas Technology Summit conferences. Ex. 11. And some of the most important customers of Silver Peak are based in Texas. *E.g.* Ex. 4 (Masergy in Plano); Ex. 5 (Service King Collision Repair Centers). Indeed, Silver Peak's CEO does not actually say that it is inconvenient for him to travel to Texas. *See* D.I. 55-1 (Hughes Decl.).

Additionally, all of Realtime's witnesses are located in, or much closer to, Texas than to California. Deepika Pagala, an electrical engineer employee of Realtime, is located in this District (in Plano, Texas), and she has knowledge regarding Realtime's intellectual property. Ex. 2 at 32-35; Tashjian Decl. ¶7. James Fallon, an inventor of the asserted patents, is in Armonk, New York. *Id.* at ¶9. Stephen McErlain, Vice President of Realtime, resides in Astoria, New York. *Id.* Gerald Padian, a member of the Board of Directors of Realtime, resides in Katonah, New York. *Id.* And Richard Tashjian, Secretary-Treasurer of Realtime, resides in Manhasset, New York. *Id.* at ¶2. All of the New York based witnesses would need to travel ***twice*** as much— or additional 1,300 miles—if the case is transferred to California. Defendants' argument to ignore Realtime witnesses' convenience should be rejected. Realtime's witnesses in New York are not foreign witnesses for which 100-mile rule can be bent. *See In re Genentech, Inc.*, 566 F.3d 1338, 1344 (Fed. Cir. 2009) (Stating that ***foreign*** witnesses would need to travel a

9

significant distance no matter where in the U.S. they testify). The factor regarding cost of attendance of willing witnesses weighs against transfer.

### 2. The sources of proof are just as accessible, if not more so, in E.D. Tex. compared to N.D. Cal.

Silver Peak essentially concedes that it is not inconvenienced regarding this factor: "technological advances … lighten the relative inconvenience of transporting large amounts of documents" (Mot. at 11). Indeed, all of the relevant documents are likely kept electronically, which would minimize if not completely eliminate any inconvenience to Silver Peak. *See J2 Glob. Commc'ns, Inc. v. Protus IP Sols., Inc.*, No. CIV A 6:08-CV-211, 2009 WL 440525, at *2 (E.D. Tex. Feb. 20, 2009) ("identifying the location of electronic sources of proof will typically not tip this factor in favor of transfer."); *Plant Equip. Inc. v. Intrado Inc.*, No. CIVA 2-09-CV-395TJW, 2010 WL 2465358, at *3 (E.D. Tex. June 16, 2010) (failure to show that transporting evidence would pose significant additional inconvenience weighed against transfer). Indeed, "in the modern era the inconvenience of making documents available some distance from their source is minimal." *Ingeniador, LLC v. Adobe Sys. Inc.*, No. 2:12-CV-00805-JRG, 2014 WL 105106, at *2 (E.D. Tex. Jan. 10, 2014).

Moreover, Realtime has personnel and relevant documents in this District, in Tyler and Plano, Texas. Realtime opened its Tyler office in October 2009—more than six years before filing of this case. Tashjian Decl. ¶4. Realtime opened its Tyler office to, *inter alia*, further promote its licensing efforts, and has conducted business and housed relevant documents and physical products in Tyler ever since. *Id.* at ¶5. Documents located in Tyler include patent file histories, licenses, and other documents relating to the patents-in-suit. *Id.* The Tyler office also has physical devices and prototypes, source code, and demonstration software, which are relevant to, *e.g.*, secondary consideration of nonobviousness, among other things. Realtime also opened a second office in this District, at Plano in September 2015, and Realtime's engineer (Ms. Pagala) works there. *Id.* at ¶7. In short, at the time this case was filed, the bulk of

Realtime's relevant evidence was, and still is, located in this District. *Id.* The factor regarding source of proof weighs against transfer.

### 3. N.D. Cal does not possess more relevant subpoena power.

Silver Peak argues that this factor purportedly weighs in favor of transfer because it found two former employees who it believes still reside in N.D. Cal. As an initial matter, Silver Peak fails to show that any of these alleged third-party witnesses have any unique knowledge of relevant facts not already held by party-controlled witnesses. But even assuming the testimony of these witnesses is necessary, Silver Peak's argument is foreclosed by Fifth Circuit law and the Federal Rules. As this Court held previously, "E.D. Tex. … may instruct these witnesses to attend and subject them to being deposed. … [T]he Fifth Circuit observed that a videotape deposition would serve as an acceptable substitute for live testimony." *Nexus Display Techs. LLC v. Dell, Inc.*, 2015 WL 5043069, *4 (E.D. Tex. Aug. 25, 2015). And because "Defendants [will] know beforehand that their depositions will be used at trial, any inconvenience of not having the witnesses appear live is even reduced further." *VirtualAgility, Inc. v. Salesforce.com, Inc.,* 2014 WL 459719, *5 (E.D. Tex. Jan. 31, 2014). Silver Peak fails to even recognize the possibility of presenting the witnesses' testimony by videotaped deposition, let alone explain why being required to do so would be an inconvenience.

Moreover, as to the three alleged prior art witnesses Silver Peak identified, Silver Peak fails to show that they have knowledge of material facts or that their testimony would be necessary for trial. As this Court has previously noted, "inventors of prior art rarely, if ever, actually testify at trial." *Adaptix, Inc. v. Verizon Wireless*, No. 6:15-cv-00045-RWS-JDL, slip op. at 8 (E.D. Tex. Aug. 12, 2015). Accordingly, this Court has rejected arguments just like Silver Peak's argument here because, "without even indicating on a good faith basis that a party intends to call a prior art witness to trial, it allows litigants to cherry-pick third parties who happen to have an invention in the relevant art and are located in the litigant's preferred district in order to sway the convenience analysis." *Id*.

Further, Silver Peak ignores a number of obviously relevant third-party witnesses located in or around this District. For example, just as there are former Silver Peak employees in California, there are former Silver Peak employees in Texas who are knowledgeable about the accused products. *E.g.*, Ex. 7 (David Rogers, a former Silver Peak employee in Austin, Texas, stating "Silver Peak accelerates data movements between data centers … best performance value in WAN optimization"); Ex. 8 (Todd Cleveland, a former Silver Peak employee who was a Channel Manager for Silver Peak).

As another example, some of the biggest customers of Silver Peak for the accused products are based in Texas, including in this District. For example, Masergy, based in Plano, Texas, is a major Silver Peak customer. Ex. 4 (Masergy Article); *see also, e.g.,* Ex. 5 (Silver Peak customer based in Richardson, Texas). These third-party entities have knowledge regarding the use and operation of the accused products, which are relevant to, *e.g.,* indirect infringement. The factor regarding availability of compulsory process weighs against transfer.

### 4. The "practical problems" and judicial economy here strongly weigh against transfer.

"Practical problems include those that are rationally based on judicial economy." *Eolas Techs., Inc. v. Adobe Sys., Inc.*, 2010 U.S. Dist. LEXIS 104125, at \*27 (E.D. Tex. Sept. 28, 2010). For example, the existence of other suits involving the same or similar issues may create practical difficulties that "will weigh heavily in favor or against transfer." *Id.* Indeed, the "existence of multiple lawsuits involving the same issues is a paramount consideration when determining whether a transfer is in the interest of justice." *Volkswagen III*, 566 F.3d at 1351; *see also In re Google Inc.*, 412 Fed. Appx. 295, 296 (Fed. Cir. 2011) ("having one trial court decide all the[] claims clearly furthers" the "orderly, effective administration of justice").

To transfer this case, Silver Peak asks the Court to sever it from HP, even though there are overlapping products (*e.g.* "HP Silver Peak VX," Ex. 1). Splitting this case would create two separate cases in two different districts involving the same plaintiff, the same asserted patents,

and overlapping accused products and witnesses. Severing this case and transferring Silver Peak to California is the antithesis of judicial economy.

Moreover, in *In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 (Fed. Cir. 2010), the Federal Circuit held that the district court's experience with the patent-in-suit from prior litigation, coupled with the fact that there were other co-pending cases before the court involving the same patent, provided a "substantial justification for maintaining suit in the Eastern District of Texas."

As in *Vistaprint*, this Court has substantial experience with all of the asserted patents from prior and pending litigations. The *Actian* action currently pending before this Court involves the '530, '908, and '513 patents at issue in this case. The Court recently held a hearing on claim construction and summary judgment on indefiniteness for these patents and issued its rulings. Case No. 15-cv-463, D.I. 362 (*Markman* Order). The *Oracle* action (Case No. 16-cv-0088) currently pending before this Court involves the '530, '908, '513, and '728 patents. The *Oracle* action has the same schedule as the *Actian* case. The *Packeteer* (Case No. 08-cv-144) and *MetroPCS* (Case No. 10-cv-493) actions involved the '506 and '530 patents, respectively, and the Court held hearings and issued orders on several substantive issues and motions, including claim construction and summary judgment. The *Packeteer* and *MetroPCS* cases settled just before trial after the parties submitted their proposed jury instructions and trial exhibit lists. The mere fact that this case involves different defendants does not negate the significant judicial economy benefits of this Court's familiarity with all of the asserted patents, Realtime's claims, the prior art, claim construction, and damages issues.

Also, the related cases (Case No. 16-cv-87 and 16-cv-89) that have been consolidated for pre-trial purposes undeniably involve substantial overlap in issues of fact and law, including the validity of the overlapping patent claims and claim construction, to name a few.

Far from promoting the interest of justice, transferring this case "will only consume unnecessary additional judicial resources" by requiring another court to address overlapping issues, and would create a risk of inconsistent rulings. *Mondis Tech. Ltd. v. Top Victory Elecs. (Taiwan) Co.*, 2009 U.S. Dist. LEXIS 103394, *14 (E.D. Tex. Oct. 23, 2009); *see also Adrain v.*

13

*Genetec Inc.*, 2009 U.S. Dist. LEXIS 86855, *9-10 (E.D. Tex. Sept. 22, 2009) ("[T]he division of the case into multiple suits may be more convenient for [the defendant], but it would impose a significant burden on the plaintiff, witnesses, and the federal court system. In addition to the burden on the courts, the existence of multiple lawsuits interpreting the same patent creates an unnecessary risk of inconsistent claim construction and adjudication.").

The *In re Verizon* case cited by Silver Peak in an attempt to undermine the significance of this factor (Mot. at 13) merely stand for the proposition that, where the other transfer factors **clearly** favor of transfer, the existence of co-pending litigation, **by itself,** should not preclude transfer. *In re Verizon Bus. Network Servs. Inc.*, 635 F.3d 559, 562 (Fed. Cir. 2011) (noting the "stark contrast" between the convenience of the venues). Here, **none** of the factors clearly favor transfer, and in addition to the co-pending litigation, this Court is already very familiar with all of the patents-in-suit. Silver Peak's citation to the *Morgan Stanley* case (Mot. at 13) also does not help Silver Peak, as this Court has recently gained familiarity with the patents-in-suit through the *Actian* and *Oracle* actions involving four of the five patents asserted against Silver Peak after the *Morgan Stanley* case concluded. Judicial economy weighs heavily against transfer.

### C. The Public Interest Factors Weigh Against Transfer

#### 1. Administrative difficulties and court congestion

Silver Peak argues that this factor favors transfer, even though its own cited statistics show that the median time from filing to trial is faster in this District: 20.7 months in this District compared with 24.6 months in N.D. Cal. Mot. at 14. A four-month differences, or 20%, is not a "neutral difference" (*id.*) nor does it make this factor favor Silver Peak's motion. The factor regarding court congestion weighs against transfer.

#### 2. Texas has a greater interest.

To support its arguments, Silver Peak falsely asserts that "the patents-in-suit were invented" in N.D. Cal. (Mot. at 14). The patents-in-suit were actually invented in New York, much closer to this District than to California.

Moreover, Silver Peak argues that N.D. Cal. has a greater interest because it is based there. Mot. at 14. But this Court has expressly rejected such an argument, as it amounts to an argument that the Court should transfer the case "because [the California] jurors will be biased toward the defendant." *Ingeniador, LLC v. Adobe Sys. Inc.*, 2014 WL 105106, *4 (E.D. Tex. Jan. 10, 2014). Indeed, such an argument "raises troubling fairness implications." *Phoenix Licensing, LLC v. Royal Carib. Cruises Ltd*, 2014 WL 7272640, *5 (E.D. Tex. Dec. 22, 2014).

Regardless, Silver Peak is incorrect that California has a greater interest. Texas has just as much interest in this case as California, if not more. For example, Silver Peak's "most strategic partner," Dell, is based in Texas. Ex. 3. And this District and Texas is home to some of the major customers of Silver Peak. *E.g.,* Ex. 4 (Masergy in Plano); Ex. 5 (Customer in Richardson).

Moreover, Realtime has deep ties to this District, where two Realtime offices are located. Realtime opened its Tyler office in **October 2009–**over six years before filing of this case. Tashjian Decl. ¶3. Realtime's electrical engineer, Deepika Pagala, works in Plano, Texas. *Id.* at ¶7. This factor weighs against transfer.

### 3. The other public interest factors are neutral.

Realtime does not dispute that the remaining public interest factors are neutral.

## V. CONCLUSION

As explained above, Silver Peak cannot meet its burden of showing that N.D. California is clearly more convenient than this District. Silver Peak's motion should be denied.

Dated: October 13, 2016            Respectfully submitted,

By: /s/ C. Jay Chung
Marc A. Fenster (CA SBN 181067)
Email: mfenster@raklaw.com
Brian D. Ledahl (CA SBN 186579)
Email: bledahl@raklaw.com
Reza Mirzaie (CA SBN 246953)
Email: rmirzaie@raklaw.com
Paul Kroeger (CA SBN 229074)

15

Email: pkroeger@raklaw.com
C. Jay Chung (CA SBN 252794)
Email: jchung@raklaw.com
Jeffrey Z.Y. Liao (CA SBN 288994)
Email: jliao@raklaw.com
Christian Conkle (CA SB No. 306374)
Email: cconkle@raklaw.com
RUSS AUGUST & KABAT
12424 Wilshire Boulevard, 12th Floor
Los Angeles, CA 90025
Telephone: 310/826-7474
Facsimile 310/826-6991

T. John Ward, Jr. (TX SBN 00794818)
E-mail: jw@wsfirm.com
Claire Abernathy Henry (TX SBN 24053063)
E-mail: claire@wsfirm.com
WARD, SMITH & HILL, PLLC
1127 Judson Road, Suite 220
Longview, Texas 75601
Tele: 903/757-6400
Facsimile 903/757-2323

**Attorneys for Plaintiff**
**REALTIME DATA LLC d/b/a IXO**

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was served on all counsel of record via email on October 13, 2016.

/s/ C. Jay Chung